This morning is December 17, 1265, Biodelivery Sciences, against Monosol, Rx. Mr. Bromberg. Good morning, Your Honors. Thank you. May it please the Court. This case poses the question, can you get more than one bite at the apple? Monosol, now called Aquestive, says you get at least four. The Patent Office intervener says there's no limit. But to the contrary, the law provides that collateral estoppel issue preclusion applies to proceedings in the Patent Office, including the board proceedings below. So I'd like to address two points. The first is the law showing collateral estoppel applies in the circumstances of this case. And secondly, that in any event, the board decision was wrong on the facts, that BDSI Biodelivery actually proved its case to some extent through Monosol's own witness. So first, a brief factual background. The earlier proceedings didn't provide for cross-examination. And wouldn't we especially recognize that the Patent Office have a good feeling for how much of a difference that makes in their proceedings? Your Honor, you are correct that the re-exam proceedings did not provide for cross-examination, but they did provide several rounds of back and forth between the parties, examiners below, a board on review, and opportunities to contradict the evidence given by any witness, including, for example, by a counter declaration, by citing references, or by putting in a paper that explained why there was something wrong with what the expert put forward. So while it is a difference, it is not a difference that matters here. And under the B&B Hargis case that the Supreme Court handed down in 2015, that involved TTAB proceedings where there are no live witnesses, and a district court proceeding where there are live witnesses, and the court said that is not, that doesn't matter. However, the question is, while there are differences, the question is whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair. And neither the appellee or the intervener argues that that's the case here, because in re-exam proceedings, as the court knows, you have several steps, several back and forths between the parties, involvement of an examiner, in fact, even the right to amend your claims, which is frequently exercised and was exercised here. So there's plenty of procedural safeguards involved in the re-exam proceeding, and it definitely meets the standard in the B&B Hargis case for a proceeding that ought to have collateral. And two of the earlier cases were not final at the time of the decision. Isn't that correct? That is correct, Your Honor. And so we think that on the one hand, you have the 588 case, which was final before these proceedings below started. And on the other hand, you had two that were in process, the 337 and the 080. All three are actually final now. But before we get to that, I mean, the overall question is whether collateral estoppel even applies to IPRs or re-examinations and IPRs, correct? Yes, Your Honor. And this is a question of first instance. Well, it's a question that this court addressed a couple weeks ago in the Max Linear case in finding that in an IPR proceeding, collateral estoppel does apply. So we believe that that was the correct ruling. IPR to IPR or re-exam to IPR? That was IPR to IPR, Your Honor. But what do we have by way of congressional intent? What has Congress said as to whether collateral estoppel should apply in this instance or not? Your Honor, I believe that it's really a blank slate as far as Congress is concerned. There are provisions in the America Invents Act that talk about estoppel in court proceedings after you've had an IPR, but there's nothing else that would address the question of whether an old-style re-examination proceeding would have collateral estoppel impact on an IPR proceeding. So that is a question of first impression. Okay. And if that's true, then is there a presumption that collateral estoppel would apply? I think there is a presumption that collateral estoppel would apply, Your Honor, based upon the case law and the congressional record. So we think that that should be applicable here. And we think that the B&B case is very informative because it involves the TTAB, which has procedures quite analogous to what we have in an IPR or even in a re-exam versus a district court proceeding. So those procedures are different, but they're close enough to permit collateral estoppel. Why don't you lose on the merits? Because Chen doesn't disclose the 10% uniformity aspect of the claims. Okay. That's an excellent question, Your Honor, and we believe that- Most questions from the bench are excellent questions. I would agree, Your Honor. The Goldberg Declaration, which is sort of like the linchpin for the proposition that Chen does not disclose uniformity, is flawed in many ways as we discuss in our brief. But let me just point out two ways in which it actually demonstrates that the less than 10% variation standard is met. The first way is that, and you can see this all in the record on page A1356. That's where she has her chart. And she chose the hypothetical values that she plugged in for her statistical analysis. So they're not actually out of Chen. And what she did was she chose values that ended up producing a standard deviation of 35 to 44% greater than Chen required. Chen says 1 milligram, plus or minus. She chose values that gave her 1.379 milligram, 1.439 milligram, or 1.350 milligram as a standard deviation. If you actually met the Chen requirement that it's a 1 milligram standard deviation, then you would choose lower values than the ones that she put in. And if you did, you'd get below 10%. Because even though she chose these higher values that gave her a higher standard deviation than Chen specifies, she also rounded down. She said, okay, 1.439 is rounded down to 1, a standard deviation of 1. So just as a statistical analysis, this declaration is not only wrong, but it also proves that Chen discloses less than a 10% variation. Here's the second way that it does that. The board in its decision, and this is at appendix 22-23, says values that differ by more than 10% from the mean lie outside the variance allowed by claim one of the 167 patent. That's a direct quote. That's what they determined. That would mean a range from 90% to 110%. But what Goldberg calculates is not that. She says in her declaration, here's how I did it, and I was told to do this by the lawyers, basically is what she says. What she did is she determined the difference from the highest value sample to the lowest value sample. In other words, not measuring from the mean, but measuring from the biggest sample to the littlest sample, again with values that she herself chose and put in the table. What she came up with at the highest was a range of 12%. But that's from one value to the other. If you think of that as a 6% collar around the mean, you've now got a range from 94% up to 106%. This proves that Chen discloses values that differ by less than 10% from the mean, well within the variance allowed by the claim. So we think that the Goldberg declaration actually proves BDSI's point. In addition, Your Honor, of course, BDSI put in evidence from its own experts showing that by a visual test, a weight test, and a dissolution test, the values come out within that 10% range. So we believe that on the merits, those matters were demonstrated. So that's what I would say on that. And we think that the jurisprudence of the Supreme Court and of this Court is clear that collateral estoppel should apply. We believe that given the relatively robust nature of the reexamination proceedings below, which took place over a period of five or six years for all three of these, that you have a very solid reason, policy reasons, with a congressional presumption that collateral estoppel should apply unless there's some specific reason why it shouldn't. We think you have a very solid basis for applying collateral estoppel to these reexamination results that involve the same uniformity limitation that was found to be disclosed three times before in three prior reexamination proceedings in which a total of 520 claims were invalidated because Chen discloses that very uniformity limitation that was at issue. And so that's what we would ask the Court to reverse the outcome here and that the claims at issue be found to be invalid over the Chen reference because of its disclosure of the uniformity limitation that appears in these 167 claims, just as it appeared in the claims of the three previous patents that were invalidated. So if there are not further questions, Your Honors, I will reserve the remainder of my time for rebuttal. Thank you. You have rebuttal time. And thank you, Mr. Bromberg. Thank you, Your Honor. Mr. Bromberg. May it please the Court, and good morning. The first issue I'd like to address, Your Honors, is the weight test. Can we divert your attention to collateral estoppel? Sure. On the theory that if collateral estoppel applies, we do have a somewhat different platform to work from. Absolutely. Absolutely. I will address collateral estoppel, and the weight test is important for that, and that's what I will get to right now. We believe there are several reasons why collateral estoppel should not apply, but what I would like to address is the lack of identity, because we believe there was a lack of identity versus the reexams and the IPR proceedings. Is your theory that it doesn't apply at all, just as a matter of the overall construction of these relationships and actions, or that there are a whole bunch of exceptions to collateral estoppel and that the exceptions might apply in your case? Our argument is that collateral estoppel does not apply at all because collateral estoppel could not be proved because there was a lack of identity. And we have several other arguments, but that is what I would like to focus on. That goes to the argument whether it applies in this case. Yes. That's assuming that collateral estoppel applies at all. That's correct. Can you address that issue? Does it apply at all? We haven't made that argument. That is the government's argument. We support that argument. But our argument is that if it does apply at all to the board, it doesn't apply in this case because there was a lack of identity. In the board decision, they did consider arguments on collateral estoppel, correct? The board did consider arguments on collateral estoppel. So why do you say that you haven't addressed that issue? It's been addressed. It's already been addressed. Yes. The issue has been addressed, and we are saying that the board got it correct in saying that collateral estoppel does not apply. But they said it didn't apply in that instance. Yes, in that instance. That's what our argument is. Okay. Well, if the board addresses collateral estoppel in that instance, then isn't it the case that collateral estoppel – But in this particular case, we find that it doesn't. Right. I agree with your assessment, and we agree with the board's reasoning. And the reason why – Just to make sure, you do agree that collateral estoppel applies in re-exam IPR hearings, cases? We don't agree with that, Your Honor, but we don't have to agree with that because in this instance – Sounds like you just did. You just did agree with that. Let's rephrase the question. Can it apply? Sure. In such a proceeding? Yes, but it can't apply in this instance because there was a lack of identity. So collateral estoppel applies in IPR proceedings and in proceedings where you're looking at a result from a re-exam, and you're looking at it from the viewpoint of an IPR. Your position and what you're telling us, in a general sense, collateral estoppel applies. The doctrine of collateral estoppel applies in that situation. We believe that if the doctrine of collateral estoppel can apply, it can't be applied in this instance. We're not trying to tie you down to some sort of admission, but to be clear, because we know that there are a whole bunch of exceptions to collateral estoppel. Sure. They're in the restatement. It's an equitable doctrine. And if your argument, your primary argument, is that in any case, assuming that it applies in principle as in any other litigation, if it's already decided it's over, that you're subject to the exceptions, whether there's a change of law or a change of fact or new authority. I don't remember what they all are. That is correct. Is that where we are? Yes, Your Honor. Okay. So collateral estoppel applies, and it applies on a case-by-case basis, depending on if the issue's been litigated before, if the result depends on that issue. Is that correct? Yes, Your Honor. Okay. And in this case, the claims require a measurement of an actual amount of active and comparing it against a desired amount. Okay? And the point about the weight test is you can't get a measurement of an actual amount of active from a weight test. Okay? The weight test isn't good enough. Now, going to the issue of identity, in all three reexaminations, what the board found was, one, we are not going to construe these claims to require an actual amount of active as compared to a dosage amount or a desired amount, a reference amount, and, two, that it was the weight test that was the reason why they were rejecting the claims. And this is very succinctly pointed out in a paragraph in the 337 reexam on appendix page 284, and that is quoted in our brief, and I'll point out in the other reexams where you can find it. That exact same paragraph is found at appendix page 329, and that's in the 080 reexam. I point out 329 because that one is not cited in our brief. What exactly are you arguing, whether the weight issue was actually litigated or not in the cases? What we're arguing is that there was a separate issue of patentability at issue in the reexams than there was in the IPR. In the reexams- So you're arguing that's why collateral estoppel does not apply? That is one of the reasons why we are arguing why collateral estoppel doesn't apply. We also believe it should not apply because of the difference in the natures of the proceedings, the lack of cross-examination, the examinational nature of inter-parties reexams. But at its core, the collateral estoppel issue can be decided on identity alone. In order to apply collateral estoppel, the issues have to have been identical. If there is a difference in patentability, even if you have the same claim language, and we cited cases on this, and Ray Herr is one of them in our brief. Even if you have the same claim language, if there's a different issue of patentability, collateral estoppel cannot apply. And the board construed the claims in the reexam differently and relied on evidence in the reexams that cannot establish unpatentability in the 167 case. You haven't mentioned the lack of cross-examination in the prior proceeding. You think that's not significant? No, we do think it is significant, Your Honor. Cross-examination is a fundamental tool in the kit of litigants, and cross-examination was a significant reason why the board below found that appellants had failed to establish unpatentability on the merits. I'm not sure that that's an element of collateral estoppel. Cross-examination is not an element of collateral estoppel, but whether or not the parties had a full and fair opportunity to litigate is an element of collateral estoppel. Well, no, it's whether the issue was actually litigated at all. Different courts will kind of use this analysis of cross-examination for different factors, but certainly the lack of cross-examination is front and center in many decisions on whether or not the prior decision should be carried forward into future actions. What about the merits, the Chen reference? Sure. On the merits, and Your Honor stated correctly, that Chen, there is no disclosure in Chen of an actual amount of active in the individual dosage units, and that's what's needed to do this comparison in order to invalidate the claim. You need an actual amount of active as compared against a desired amount. I've already explained that the weight test isn't good enough to establish. All of the arguments that were made were about the weight test. We dispute that Chen even passed the weight test, but it doesn't matter because the weight test doesn't give you that actual amount of active. Now, the only other issue on the merits was that knowing that the weight test wasn't good enough, appellants actually tried to do the only test that will give you that actual amount of active, and that's a chemical assay. And what they tried to do is recreate the films from Chen in Example 7, but they failed to recreate those films. They weren't reproducible. And when they measured the films that they tried to recreate, they did not measure the thickness. And so they were not able to prove that they measured films that were substantially equally the same size, and that is required explicitly by the claims. And so there was a failure on the merits, and we would ask for the Board to affirm on the merits for those reasons. Just one quick question on the cross-examination issue. How did the lack of cross-examination affect the outcome of the 588 patent re-exam? There were certainly declarations that were submitted in the prior re-exams, and the testimony in this IPR highlighted the fact that the thickness was an issue and that you had to get an actual amount of active for those claims. And if the Board had actually construed the claims in the re-exam to be similar to the claims in the 167 patent, that cross-examination would have been significant in determining patentability, or at the very least it would have highlighted to the Board below what the real and true issue was in the 167 IPR. But as I mentioned, the issues in the re-exams were completely different because the claims were construed differently. And I see my time is running out. You're sharing your time with me still? Is that right? Yes. Okay. Thank you. Thank you. May I please the Court? Congress's intent controls in deciding whether common law issue preclusion applies, and the way the America Invents Act statutory provisions work together envisions a non-common law scheme. In particular, the statute provides for some mandatory estoppels, and it also explicitly gives the agency a lot of discretion to decide how different proceedings relate to each other. But it is a trial, an appeal court, purporting to have some aspects of litigation. That's true. And, Your Honor, just so I understand, are you talking about inter-parties re-examination or IPR? IPR. IPR is certainly a trial and has a lot of aspects of litigation, and there are more estoppels baked into the statute under IPR than there are under the former re-examination statutes. So that is to give both parties. The agency is bound to apply the statute, and there's sort of an asymmetry at the agency because one party stands to lose a property right, the other does not. And so the estoppels built into the statute are designed to account for that asymmetry more than the common law. But where is the estoppel in the statute? I'm sorry, what was that? You say the estoppel is built into the statute? Yes. Where? There are several provisions. There's an estoppel that takes effect in the district court. Is that what you're talking about? No, Your Honor. I'm talking about under Section 315E, there's an estoppel that says that the petitioner may not request or maintain a proceeding before the office with respect to that claim, the claim that was already at issue, on any ground that the petitioner raised or reasonably could have raised in the earlier IPR proceeding. So that's one of the statutory estoppels that addresses other proceedings at the agency. Well, what's your argument? I don't quite understand where you're headed. Are you arguing that just as a general proposition that the doctrine of collateral estoppel does not apply with respect to re-exams? Yes, as a general proposition. You're taking a position different from what we heard just now. That's correct. As a general proposition, the common law doctrine of collateral estoppel is not- What does Congress say that- where does- show me where Congress supports your position. Sure. So there's Section 315E that I was just talking about that bakes in one particular estoppel, which would be superfluous if the common law doctrine necessarily applied. Also, there is the provision under Section 315D that talks about multiple proceedings, and it gives the agency the discretion to, for example, consolidate or stay multiple proceedings on related issues or not. And implicit in that is the assumption that if these proceedings are not consolidated, they could have different outcomes, and the agency is going to have to deal with the different outcomes. So you say by silence we should infer that not only the statement where estoppel is mentioned applies, but in other provisions where it is not stated? It's not by silence, Your Honor. It is explicitly talking about the ways these different proceedings interact with each other. It doesn't use the word estoppel. The estoppel appears just once in the statute, and it's explicit, and it is not the common law doctrine. It is a much more rigorous doctrine than the common law. The common law would not, I think, cannot be assumed to say that an agency decision can dominate and overrule and prevent a federal court from reviewing the merits of an issue. So it overturns the common law doctrine. Now, you're asking us to assume that something that drastic is inferred by silence as to other statutory provisions? Your Honor, I don't think there's a silence. There is that provision that talks about estoppel. There's also other provisions that another example is Section 316A4, which allows the agency to establish regulations governing the relationship of a given review to other proceedings in the office. So it's another example of the agency sort of being entitled to decide how estoppel will or will not apply by prescribing regulations. There is also the Section 325D, the second sentence of that section, has another element of estoppel where it says the agency may take into account... Does it say that? Well, it says... Does it say they're dealing with estoppel? It says the agency may take into account whether the same prior art or arguments previously were presented to the office. Take into account estoppel is an equitable doctrine, so a lot of things are taken into account. So this says you should take into account the particular facts. That's correct. But the point here is that layering on the common law doctrine on top of the agency's statutory requirements could result in anomalous outcomes. So, for example, if the agency has to apply common law estoppel, it may be that in a certain situation it cannot take into account whether that prior art was previously before the office. Well, that doesn't mean that estoppel doesn't apply. It just means it didn't apply in that instance, if that's the case. Right, well... You're arguing it doesn't apply at all, or it seems to me that you're also arguing that it applies only on the discretion of the director. Whenever the director wants it to apply, it will, and if it doesn't, it won't. No, well, that's not true. The way the statute sets up a scheme includes estoppels within it, and some of them are mandatory, and some of them are within the director's discretion, but when the agency has not adopted any rules establishing anything beyond what the statute mandates, there isn't anything beyond what the statute mandates. And so in this case, we think there is not. There's no presumption that estoppel would apply to an IPR proceeding absent the director's discretion? Well, there's a general presumption under the law that collateral estoppel applies to an agency unless the statute makes clear, either implicitly or explicitly, that it does not. And here the statute is silent, right? No, I don't think the statute is silent. I think all of these sections that work together are not silent on how estoppel should be applying in the agency. So there is the provision that talks about estoppel explicitly. Where in the statute does it say that whether or not estoppel applies is at the discretion of the director? Oh, there's nothing that says that, but there are particular points at which there is discretion. And so, for example, the director's discretion whether to institute or not includes under Section 325D in the second sentence, which I want to mention applies to IPRs by its reference to Chapter 31. That section is at the institution stage saying the director can decide to not institute based on the agency having already seen that prior art with those same arguments. So that's one instance in which the agency has the discretion to make a rule saying, or maybe not even under a rule, maybe it just has the discretion inherently under that statute to say, we're not going to institute this case because we've seen this prior art before. That didn't happen at the institution stage in this particular case. I think a collection of instances or piecing together arguments, I just don't see that that arises. And to suggest that there's discretion, I don't see that that rises to any clear expression of congressional intent or how they address it in this point. I don't have any other questions to address. Jodorina, I wanted to quickly address something that you raised earlier in the argument about the board having applied estoppel here. In this case, what happened was the board, neither party argued to the board to question the premise. And so the board sort of just started with the premise that both parties started with, that collateral estoppel applies in these proceedings and then looked at whether or not it applies. And so the agency would like the chance to address that premise in the first instance. Okay. Thank you, Mr. Rutherford. Mr. Bromberg. Thank you, Your Honors. On the patent office intervention, we believe that that's really fundamentally unfair to seize upon this appeal as a place where they're going to make this policy argument. We believe, as the court's questions suggested, there's nothing in the AIA statute that abrogates the rule that collateral estoppel, common law collateral estoppel, applies in an IPR proceeding. But we think that the patent office, which was, after all, the decision maker below, waived their right to argue that inter-parties re-exam cannot give rise to collateral estoppel because they applied it below. They said, okay, let's look at collateral estoppel. It doesn't work on the particular facts of this case. Let's, for the sake of our argument here, assume that estoppel, in principle, applies. There are still problems with the merits of the application, are there not? Or is your view that that answers everything? Well, we think that even if collateral estoppel does apply, whether it fits here. Yes, we think that the... Because there are exceptions. There are exceptions, yes. And the board below took the Freeman case as saying, oh, we have discretion to ignore it even if we think it does apply. We think they went far too broad from that case. And in that case, they actually applied collateral estoppel with respect to a claim construction from a court proceeding into a re-examination review. So we don't think that case supports that. But on the facts here, my brother at the bar argued that there was not an identity of issue. Well, there certainly was. And in fact, the easiest way to see that is that the board in its decision relied upon Dr. Goldberg for contradicting the very thing that the board had found in the 588 re-exam and then subsequently in the others. That that uniformity of... Some of the other re-exams were not final at the time that the board made its decision here. And query whether in that instance collateral estoppel can apply. Okay, well, Your Honor, I think in the Max Linear case, this court established that it does apply in an IPR. IPR to IPR, as we discussed earlier. And that the application would be dependent upon meeting the criteria for collateral estoppel. One of them is the finality of judgment. But where the judgment has gotten to the final stage at the time that the issue is presented, there's an issue. So in the proceedings below, which went on for several years... Those cases hadn't been fully decided. That's correct, Your Honor. And so we rely upon the 588, which was final, before these proceedings started. And then we rely upon the others... And the 588 has, I think, a built-in problem with whether the issue was actually litigated. Okay, I believe the issue was actually litigated, Your Honor, because the question was, does Chen disclose that 10% limitation on active? And the board in the 588 proceedings held that it was, and no other claims were raised by Monosol. No other issues in the claims were raised by Monosol other than that uniformity limitation. So there's at least a waiver, even if they could get traction with respect to other claims, which we don't think they could get. So we think that issue was actually litigated. It does... Chen disclosed the uniformity. In 588, the board said yes. In the proceedings below, the board said no, resting on the Goldberg Declaration, which I addressed earlier, which we think actually does show that the uniformity limitation is met, just as it was in the earlier one. So we think that that establishes that collateral estoppel should have been applied here by the board below. Thank you, Your Honors. Okay, thank you. Thank you all. The case is taken under submission.